**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)**

---

JARRETT R. JENKINS,
Plaintiff,

vs.

TRANS UNION (OF DELAWARE), LLC,
Defendant.

CASE NO. 2:25-cv-06226-NCM-ST

**TRANS UNION LLC'S RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

---

Defendant consumer reporting agency Trans Union LLC ("Trans Union"), by counsel, pursuant to Federal Rule of Civil Procedure 56, submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment (the "Motion").

## I. THE PARTIES

1. On October 8, 2025, pro se Plaintiff filed this lawsuit alleging that Trans Union violated the Fair Credit Reporting Act, 15 U.S.C. §1681 e(a) ("FCRA"), by providing Dedicated with a copy of Plaintiff's consumer report without a permissible purpose. *See generally* Compl. Doc. No. 1.

2. Plaintiff is a consumer as defined at 15 U.S.C. § 1681a(c). See Id. ¶ 9.

3. Trans Union is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681a(f). *See* Declaration of Donald Wagner ("Wagner Declaration"), filed concurrently herewith, at ¶ 4.

## II. TRANS UNION'S REPORTING AND PROCEDURES

4. As a national consumer reporting agency ("CRA"), TransUnion operates in a highly regulated environment with tens of thousands of subscribers. *See id.* at ¶ 5.

5. Trans Union has numerous and varied procedures and systems to ensure on an ongoing basis that the furnishers of information ("Furnishers") are providing accurate information. *See id*. at ¶ 6 - 33.

6. Trans Union maintains detailed procedures to record and maintain correspondence from consumers related to their Trans Union consumer credit files. *See id*. at ¶ 6.

7. As required by the FCRA, Trans Union maintains numerous and detailed procedures to assure the maximum possible accuracy of consumers' Trans Union credit information and to conduct reasonable reinvestigations of consumer disputes. *See id*. at ¶ 7.

8. In compliance with § 1681e of the FCRA, Trans Union has in place and follows reasonable procedures to assure the maximum possible accuracy of the information contained in its credit reports. *See id*. at ¶ 8.

9. Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to assure the maximum possible accuracy of the data in its files. Information is accepted only from reliable furnishers under contract to provide accurate data. *See id*. at ¶ 9.

10. Trans Union maintains billions of pieces of data in the form of consumer files on its computer system and has spent decades developing and perfecting its procedures. *See id*. at ¶ 10.

11. Trans Union has hundreds if not thousands of procedures in place, all designed to assure the maximum possible accuracy of the information contained in its consumer files. Trans Union followed its procedures in the handling of Plaintiff's credit file. *See id*. at ¶ 11.

12. Trans Union takes a comprehensive, collaborative team approach to processing and maintaining its consumer credit data to assure the maximum possible accuracy of its consumer reports. *See id*. at ¶ 12.

13. For instance, Trans Union's Data Governance Department is made up of a team from across the company with expertise on implementing policies and procedures and potential changes to assure maximum possible accuracy. *See id*. at ¶ 13.

14. Trans Union's Data Performance Team monitors how Trans Union's systems are performing and evaluates potential changes to assure maximum possible accuracy of the information in consumer reports. *See id*. at ¶ 14.

15. It is to Trans Union's advantage to have the most accurate information possible in order to comply with the FCRA. *See id*. at ¶ 15.

16. Trans Union vets all its furnishers before accepting their data. *See id*. at ¶ 16.

17. TransUnion therefore has developed robust policies and procedures consistent with industry-wide standards to credential and, where appropriate, recredential its subscribers. *See id*. at ¶ 17.

18. TransUnion's credentialing process is designed to ensure subscribers fully comply with the FCRA. *See id*. at ¶ 18.

19. Trans Union only accepts data from reliable furnishers. Information is accepted only from contributors under contract to provide accurate data. *See id*. at ¶ 19.

20. Most data is contributed by electronic data transfer in the Metro 2® Format, and all data is reviewed for format errors (for example, data with numeric fields that contain alpha characters, data with mandatory fields that are blank, or data with an improper number of fields), and for anomalies in content (such as a creditor who normally reports 10% of its accounts as in

collection suddenly reporting 90% of its accounts in collection, or a creditor reporting all its accounts with the same current balance) prior to the data being loaded to the database. *See id.* at ¶ 20.

21. In accordance with Trans Union's reasonable procedures, Trans Union automatically removes derogatory information in less than seven years from the date of first delinquency. *See id.* at ¶ 21.

22. When the data is loaded, it is processed by complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer. *See id.* at ¶ 22.

23. Data is first pre-matched by creditor or subscriber number and account number, if the account is already present on Trans Union's database, with additional matching against the consumer's identification. *See id.* at ¶ 23.

24. Trans Union monitors data provided by creditors to detect anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected. *See id.* at ¶ 24.

25. Trans Union has developed detailed procedures for providing consumers with access to their credit files and a means to request reinvestigations if they disagree with items appearing in their credit files. *See id.* at ¶ 25.

26. Trans Union has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Trans Union in the overall process that assures the maximum possible accuracy of such reports. *See id.* at ¶ 26.

27. Consumers who disagree with the accuracy or completeness of any items of credit information that are reported in their credit file may submit disputes of those items to Trans Union. *See id.* at ¶ 27.

28. Trans Union actively encourages consumers to request file disclosures, review them, and submit disputes of any items believed to be inaccurate or incomplete in order to assure that the information reported by Trans Union is as accurate as possible. *See id*. at ¶ 28.

29. Consumers can submit disputes via the internet, through written requests, and by telephone. *See id*. at ¶ 29.

30. Trans Union maintains numerous procedures to ensure that unauthorized third parties do not attempt to manipulate the credit files of other consumers. *See id*. at ¶ 30.

31. Trans Union uses these procedures to train its employees and third-party contractors on managing communications with consumers and disputes. *See id*. at ¶ 31.

32. Trans Union only provides a consumer's credit file in response to specific inquiry by a previously approved subscriber who signed a contractual agreement that they will request a consumer's credit file for a permissible purpose only. *See id*. at ¶ 32.

33. A list of a consumer's account review inquiry history can only be seen by the consumer and is never provided to third parties. *See id*. at ¶ 33.

34. In 2015, Dedicated Commercial Recovery Inc. also known as Dedicated Financial GBC ("Dedicated"), agreed to fully comply with the FCRA and that it will only request consumer reports for a permissible purpose. *See id*. at ¶ 34.

35. Dedicated is a debt collector. *See id*. at ¶ 40.

36. On July 11, 2023, Dedicated requested Plaintiff's consumer report as an Account Review inquiry from Trans Union and based on the certification that Dedicated would only request reports if a permissible purpose exists, as included in the agreement between Dedicated and Trans Union, Trans Union provided Dedicated with a copy of Plaintiff's consumer report. *See id*. at ¶ 35.

37. There was no reason to believe that Dedicated did not have a permissible purpose to request Plaintiff's Trans Union file when it made the inquiry, nor has Plaintiff produced any evidence of such. *See id*. at ¶ 36.

38. Trans Union reasonably relied on its agreement with Dedicated that it would comply with the FCRA and only request to access consumer reports if it had a permissible purpose. *See id*. at ¶ 38.

39. Trans Union reasonably believed the Dedicated had a permissible purpose to access Plaintiff's consumer report because of Dedicated's certification. *See id*. at ¶ 39.

40. Trans Union does not have record of any hard inquiries into Plaintiff's Trans Union credit file made in 2023. *See id*. at ¶ 40.

## III. PLAINTIFF'S EVIDENCE OF CLAIMS AND DAMAGES

41. On September 21, 2026, Plaintiff Jarrett Jenkins sat for a deposition regarding his claims. *See* Declaration of ("Blankenberger Declaration") at ¶ 3.

42. On February 26, 2026, Trans Union sent Plaintiff its First Set of Interrogatories, its First Set of Requests For Production and First Set of Requests For Admission. *See* Blankenberger Declaration at ¶ 4.

43. Plaintiff's responses failed to provide any substantive information in response to Trans Union's Interrogatories related to his claims, damages, or Trans Union's liability. *See id.* at ¶ 5.

44. Plaintiff offered no evidence of a willful violation of the FCRA by Trans Union. *See id.* at ¶ 6.

45. Plaintiff has not produced any non-self-testimonial evidence of any emotional distress damages in this litigation. *See id.* at ¶ 7.

46. It is clear through discovery and Plaintiff's deposition that Plaintiff is only asserting FCRA claims based on § 1681e(b) related to Dedicated Financial GBC ("Dedicated") account review inquiry identified in the Complaint. *See* Plaintiff's Deposition at 24:12-24:17.

47. Plaintiff has not provided any medical records, witness statements or any other documents that support his claim that Trans Union was the cause for emotional distress. *See* Blankenberger Declaration at ¶ 9.

48. Plaintiff has not produced any documents during discovery to support his claim that the account review inquiry from Dedicated was not obtained for a permissible purpose. *See id.* at ¶ 10.

49. Plaintiff has not identified any witnesses in this litigation with first hand and non-hearsay knowledge for the reasons for Plaintiff's alleged credit denial. *See id.* at ¶ 11.

50. During discovery, Plaintiff has produced no consumer reports prepared by Trans Union that were provided to third parties and included the account review inquiry. *See id.* at ¶ 13.

51. Plaintiff confirmed that he was not withholding any documents not produced in discovery. *See* Plaintiff's Deposition at 26:23-29:25; 27:1-27:6.

52. Plaintiff also confirmed his Interrogatory responses were complete and accurate. *See* Plaintiff's Deposition at 11:22-12:19; 33:11-34:01; 38:3-38:6;40:40-40:13;74:23-75:03;75;18-76:08;76:19-76:23-82:16-82:18; 83:19-84:1.

53. Plaintiff also confirmed that he had no information that he thought needed to be added to his Interrogatory responses. *Id.* at 33:6-33:7

54. Plaintiff never disputed information related to the Dedicated inquiry with Trans Union. *Id*. at 40:17-40:19.

55. Plaintiff is concerned about the publication of a single Dedicated account review inquiry which was reporting as having a permissible purpose of collection by Trans Union, *see id.* at 74:02-72:15.

56. Plaintiff admits that he has no credit denials related to this lawsuit. *See id.* at 37:12-37:15.

57. Trans Union does not have record of any hard inquiries into Plaintiff's Trans Union credit file made in 2023. *See* Wagner Declaration at ¶ 39.

58. Plaintiff also alleges that Trans Union's alleged FCRA violations caused him emotional distress. *See* Plaintiff's Deposition at 38:07-38:09.

Date: November 16, 2026

Respectfully submitted,

*/s/ Hope Blankenberger*

Camille R. Nicodemus, Esq.
Hope Blankenberger, Esq.
IN #38133-49)
(admitted *Pro Hac Vice*)
Quilling, Selander, Lownds, Winslett & Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600, Ext. 601 & 614
Fax: 317-899-9348
E-Mail: cnicodemus@qslwm.com
E-Mail: hblankenberger@qslwm.com

*Counsel for Defendant Trans Union LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **16th day of November, 2026**. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| **Pro Se Plaintiff**<br>Jarrett R. Jenkins<br>jrobertjenkins@gmail.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **16th day of November, 2026**, properly addressed as follows:

| | |
|---|---|
| None. | |

*/s/ Hope Blankenberger*
Camille R. Nicodemus, Esq.
Hope Blankenberger, Esq.
IN #38133-49)
(admitted *Pro Hac Vice*)
Quilling, Selander, Lownds, Winslett & Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600, Ext. 601 & 614
Fax: 317-899-9348
E-Mail: cnicodemus@qslwm.com
E-Mail: hblankenberger@qslwm.com

*Counsel for Defendant Trans Union LLC*